*E-FILED 2/3/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SHARI JEAN WELSH, et. al.,

    Plaintiffs,

v.

U. S. ARMY,

    Defendant.

NO. C 08-3599 RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant, the United States, moves to dismiss *pro se* plaintiffs Shari and Sam Welshs' claim for relief for lack of subject matter jurisdiction. In particular, defendant contends that the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), vitiates the government's waiver of sovereign immunity from suit and deprives the Court of subject matter jurisdiction over the Welshs' claim.[1]  In their one sentence opposition, the Welshs state that the court has jurisdiction over the complaint because it arises under the laws of the United States and attached a document relating generally to the government's remediation efforts in the area of the Welshs' property. Based on the briefs and arguments of the parties, the motion to dismiss will be granted.

---

[1] The complaint, which alleges claims under the FTCA, identifies the defendant as the United States Army. The proper defendant under the FTCA is the United States. 28 U.S.C. §§ 2674, 2679. Accordingly, the United States responded to the complaint as if it were the named defendant.

1

## II. BACKGROUND

The Welshs allege that from January 30, 1998, to January 31, 2007, while residing in their home on the former Fort Ord Army base at Ready Court in Marina, California, they were exposed to carbon tetrachloride ("CT"). This exposure allegedly caused various physical ailments, loss of ability to function at school and work, and loss of income. As a result, plaintiffs seek $12,503,664 in damages.

In 1991, Fort Ord was selected for closure along with other military installations under the Defense Base Closure and Realignment Act of 1990. In 1997, the Department of Defense prepared a Base Reuse and Implementation Manual ("BRIM") to provide guidance for carrying out regulations, to identify general approaches, and to create a common set of guidelines to permit flexibility for base reuse implementation teams. Youngblood Decl., Ex. E. Users of the BRIM were encouraged to adapt the guidelines to their own base-specific circumstances. A portion of the former Fort Ord property was retained for military use while the remainder was identified for transfer to other government agencies and organizations.

In 1998, the local redevelopment authorities, the Fort Ord Reuse Authority ("FORA"), leased the Preston Park/Stillwell Park Area ("Preston-Stillwell") where plaintiffs' residence was located. Prior to leasing and in compliance with the BRIM, the Army and the FORA signed a Finding of Suitability to Transfer ("FOST") in March 1991. The FOST contained a brief description of the hazardous substances relating to the Preston-Stillwell parcel, but did not indicate the presence of CT. Subsequently, a deed transferring the Preston-Stillwell parcel to FORA was executed in August 2000.

On February 21, 1990, Fort Ord was placed on the National Priorities List of Superfund sites by the Environmental Protection Agency due to evidence of contaminated groundwater emanating from landfills. Representatives of the Army, EPA, and the California EPA signed a Federal Facility Agreement in July 1990. That Agreement established schedules for the investigation and cleanup process. In 1990, the initial presence of a CT plume in the groundwater at the Preston-Stillwell parcel was detected. Since the source of or use of CT at the former Fort Ord was not documented as

part of previous investigations, a separate investigation of CT in groundwater was initiated.[2] As of July 1999, the Army began holding regular public meetings on the status of CT and the groundwater monitoring. In 2004, the Army tested for potential vapor intrusion in the Preston-Stillwell area and concluded that the indoor levels were comparable to outdoor ambient air levels. This indicated that the levels did not pose a health risk and that the plume most likely was not the source of the CT in the air. After considering regulatory and community input, the Army developed and signed the Record of Decision, Operable Unit Carbon Tetrachloride Plume in 2007, which selected remedies to address the CT groundwater plume. In sum, the Army determined that there was no exposure pathway for groundwater contaminated by CT to reach the residents of Ready Court where the Welshs resided. According to defendant, water for residents is monitored and meets all standards, and there has been no documented intrusion of CT from the sub-surface into the residences at Ready Court.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. Fed. R. Civ. P. 12(b)(1). An objection that a federal court lacks subject matter jurisdiction may be raised by a party at any stage in litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). A motion to dismiss for lack of subject matter jurisdiction may be made on the grounds that the lack of jurisdiction appears from the "face of the complaint," or based on extrinsic evidence apart from the pleadings. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *McMorgan & Co. v. First Cal. Mortgage Co.*, 916 F. Supp. 966, 973 (N.D. Cal. 1995). Parties may bring suit against the United States only to the extent that they can show the government has waived sovereign immunity. *United States v. Orleans,* 425 U.S. 807, 814 (1976); *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2006).

---

[2] After the initial documentation of the presence of CT, investigations are ongoing with quarterly reports based off of ground water monitoring. Youngblood Decl., ¶ 7.

3

## IV.  DISCUSSION

### A.  Discretionary Function Exception

The FTCA waives the sovereign immunity of the United States for certain torts committed by government employees where a claim would exist if the government were a private party. 28 U.S.C. § 1346. This waiver of immunity is limited by the discretionary function exception, which bars claims based upon a government employee's exercise or performance, or the failure to exercise or perform, a discretionary function or duty, whether or not the discretion involved was abused. *Id.* § 2680(a). The purpose of this exception is to insulate governmental decision-making from "judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). While the Welshs bear the initial burden of proving subject matter jurisdiction under the FTCA, the United States bears the ultimate burden of proving the applicability of the discretionary function exception. *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008).

In *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988), the Supreme Court developed a two-prong test to determine whether the discretionary function exception bars a claim against the government. First, a court must consider whether the challenged conduct involved elements of judgment or choice, attributes not present where a federal statute, regulation, or policy specifically prescribes a course of action for employees to follow. *Id.* Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* Only those decisions "grounded in social, economic, and political policy" will be protected by the exception. *Soldano*, 453 F.3d at 1145. It applies if the discretionary decision is a permissible exercise of policy judgment, even if that decision is an abuse of the discretion granted. *Id.* If the federal defendant meets the burden of proving that the discretionary function exception applies, then the federal courts lack subject matter jurisdiction to hear plaintiffs' claim. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).

B.  Application of the Two Prong Test

The Welshs contend that the Court has jurisdiction over their claim for personal injury because the Army is responsible for their exposure to CT while living at the former Fort Ord, and because it arises under the laws of the United States. Defendant counters that the handling of the groundwater CT plume and the transfer of property to FORA fall under the discretionary function exception of the FTCA, thereby removing the Court's subject matter jurisdiction.

1.  Conduct Subject to Judgment or Choice

Under the first prong of *Berkovitz*, defendant argues that the investigations, remediation choices, and post-military use of the property were discretionary because the Army was not bound to follow a specified course of action. As noted above, if a guiding statute, regulation, or policy imposes both mandatory and specific requirements then the action is not discretionary. *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1027 (9th Cir. 1989).

In this case, defendant meets the first prong of the test by showing that decisions were left to the Army's discretion. The Army conducted all actions concerning the CT plume pursuant to the BRIM which does not mandate a specific course of Army conduct. Indeed, the BRIM's stated purpose is to provide guidance for carrying out regulations, to identify common-sense approaches and general practices, and to implement a common set of guidelines for the base reuse teams. Youngblood Decl., Ex. E at 1-1. It requires the Army to make discretionary judgments allowing the base reuse implementation teams to "[c]lose bases quickly, but in a manner that will preserve valuable assets to support rapid reuse and redevelopment," as well as "[f]ast-track environmental cleanup by removing needless delays while protecting human health and the environment." *Id*. at 1-2. Rather than mandate a specific course of action, the BRIM states that, "[t]o maximize flexibility and allow for site-specific solutions, discretion has been left, where possible, to allow for common-sense decisions by the implementors." *Id*. Plaintiffs fail to point to any other specific rules in the BRIM or to any additional statutes, regulations or rules that rebut the government's showing.

Defendant further overcomes the first prong because the activities at issue were subject to the Defense Environmental Restoration Program. 10 U.S.C. § 2701. The statute makes the Secretary of Defense responsible for implementing environmental restoration programs at facilities under the

5

Secretary's jurisdiction. *Id.* § 2701(a)(1). That section, however, does not require that a particular course of action be taken, but rather provides general goals and policies. The precise manner in which to meet these goals is left to the Secretary's discretion. *See Blackburn v. United States*, 100 F.3d 1426, 1433 (9th Cir. 1996) (reasoning that a manual imposing safety requirements, although mandatory, was not sufficiently specific because it failed to detail by what means those general goals are to be met).

### 2. Conduct is Susceptible to Economic, Social or Political Policy

The second prong of *Berkovitz* requires a determination of whether or not the discretionary actions taken are of the type that are susceptible to policy considerations. A presumption exists that when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, that agent's acts are grounded in policy. *United States v. Gaubert*, 499 U.S. 315, 324 (1991). In order to survive a motion to dismiss, a complaint must allege facts which would support a finding that the challenged actions are not of the kind said to be grounded in policy. *Id.* Additionally, the relevant inquiry is not whether an explicit balancing is shown but whether the decision is susceptible to policy analysis. *Kennewick*, 880 F.2d at 1028.

Having demonstrated that the Army's decisions were discretionary, defendant points to economic, human health, environmental safety, and statutory policies that guided its investigative and remedial decisions. Policy judgments are implicated "when evaluating and responding to public health and environmental hazards." *Shea Homes Ltd. P'ship v. United States*, 397 F. Supp. 2d 1194, 1200 (N.D. Cal. 2005). Here, considerations implicating economic, political, and social policies factored into the decisions at hand, including but not limited to, the parceling off of the Fort Ord property, the leasing and subsequent sale of property to FORA, and the monitoring and treatment of the CT plume. Specifically, the Army considered protecting human health and the environment, cost effectiveness, and statutory preferences for treatment as principal elements for remediation of the property. Youngblood Decl., ¶ 7 and Ex. C § 1.5. Regarding residential reuse of property while environmental plans were ongoing, the Army's decisions considered quickly putting property to productive use, spurring rapid economic recovery and reducing Department of Defense caretaker

6

costs, fast-tracking environmental cleanup, and considering impacts on the ability of communities to redevelop military bases. *Id*. ¶ 10 and Ex. E at 1-2, 1-3.

Here, the Army's investigation, remediation and reuse decisions concerning the Preston-Stillwell area were made with information indicating no exposure pathways for CT to reach the residents of Ready Court. These kinds of judgments implicate policy choices and decisions of the type that Congress intended to protect from judicial second guessing and therefore satisfy the second prong of *Berkovitz*. *See Shea Homes*, 397 F. Supp. at 1200-01 (holding that the Army Corps of Engineers' decisions on how to evaluate and address public health and environmental threats were of the kind implicating policy choices and were barred from suit by the discretionary function exception). Those policy considerations guided officials tasked with making base-wide decisions to environmental teams treating the CT plume. *See Childers v. United States*, 40 F.3d 973, 974 (9th Cir. 1995) (finding that the discretionary function exception applies not just to high-level government employees but also to "low-level employees making discretionary day-to-day management decisions based on policy considerations").

## V. CONCLUSION

Defendant demonstrates that the Welshs' claim for personal injury falls within the discretionary function exception to the FTCA. The Court, therefore, lacks jurisdiction over their claim, and defendant's motion to dismiss for lack of subject matter jurisdiction is granted. As amendment in this instance would be futile, dismissal without leave to amend is warranted.

IT IS SO ORDERED.

Dated: February 3, 2009

RICHARD SEEBORG
United States Magistrate Judge

ORDER GRANTING MOTION TO DISMISS
C 08-3599 RS

7

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Claire T. Cormier    claire.cormier@usdoj.gov

**AND A COPY OF THIS ORDER WAS MAILED TO:**

Sam Welsh
734 Brown Court
Marina, CA 93933

Shari Jean Welsh
734 Brown Court
Marina, CA 93933

**Dated: 2/3/09**                                            **Richard W. Wieking, Clerk**

                                                             **By:**_____
                                                                    **Chambers**